FINAL FORM REPLY BRIEF

# 12-687-cv(L)

## 12-831-cv(XAP), 12-885-cv(XAP)

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

➤➤ ◄◄

SAUL BIENENFELD, ESTATE OF BAGAROZZA,

*Plaintiff,*

*and*

PUBLIC ADMINISTRATOR FOR THE COUNTY OF QUEENS AS
ADMINISTRATOR OF THE ESTATE OF GUIERLLERMO PAGUAY,

*Third-Party Plaintiff,*

*v.*

BOSCO, BISIGNANO & MASCOLO,

*Defendant-Appellant-Cross-Appellee,*

*and*

DOUGHERTY, RYAN, GIUFFRA, ZAMBITO & HESSION,

*Appellant-Cross-Appellee,*

*(Caption Continued on the Reverse)*

*On Appeal from the United States District Court
for the Eastern District of New York (Brooklyn)*

## REPLY BRIEF FOR APPELLANTS-CROSS-APPELLEES

Anthony P. Gentile
GODOSKY & GENTILE, P.C.
*Attorneys for Appellants-Cross-Appellees*
  *Bosco, Bisignano & Mascolo*
  *and Dougherty, Ryan, Giuffra,*
  *Zambito & Hession*
61 Broadway, 20th Floor
New York, New York 10006
212-742-9700

*v.*

PAUL ESPOSITO, KERRY GRIFFITHS, OSSERRITTA ROBINSON,
ADMINISTRATRIX OF THE ESTATE OF LOUIS ALEXANDER ROBINSON
and OSSERRITTA ROBINSON, AISHA WILLIAMS,

*Claimants-Third-Party-Defendants-Appellees-Cross-Appellants,*

KELLY GARIGLIANO, RICHARD SMITH, DETECTIVE, RE: THIRD PARTY CLAIM
OF J. MCMILLAN, JR. V. IRIS WEINSHALL. SEE DOC # 194., JOHN MAULDIN,
MICHAEL GANSAS, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. V.
IRIS WEINSHALL. SEE DOC # 194.,

*Defendants-Appellees,*

PHILIP GARIGLIANO, RASIKA DIAS, LLOYD JOSEPH, ALEJANDRO ROSA, MERCEDES
MILLAN, PAUL CAPURSO, AARON SULLIVAN, MATTHEW RUBERTO, MALGORZATA
POROWSKI, FRANCISCA NAVARRO, ERIKA NAVARRO, AMEDEO DIGANCI, ALFONSO
MANZO, JAMES TERRELL CROMARTIE, MIGUEL GRAJALES, WILLIAM CASTRO, JR.,
ADMINISTRATOR OF THE ESTATE OF DEBRA CASTRO, KRISTY TRANSOU, BRYAN TRANSOU,
FRANCISCO CORCHADO, JACQUELINE CARNEMOLLA, JOHN CARNEMOLLA, JOSEPH
VELLA, DOMINIQUE RAMIREZ, MARIA WELLS, JUDITH EHRENSHAFT, MICHAEL
ESPOSITO, TERESA DE PAGUAY, AS ADMINISTRATORS OF THE ESTATE OF GUILLERMO
PAGUAY, ANGEL PAGUAY, AS ADMINISTRATORS OF THE ESTATE OF GUILLERMO PAGUAY,
LISA SULLIVAN, AS REPRESENTATIVE OF THE ESTATE OF FRANK RICHARD SULLIVAN.,
ROSARIO FANELLO, JOSEPH SCAROLA, CHEYENNE HOLMES, NICOLE HASTABA, SEAN
JOHNSON, ZELDA RIDDICK, DAVID GAYLE, SUNDAY OYENOLA, KEVIN DWAYNE HALL,
WILFREDO GOMEZ, IVAN KVASIC, ETTORE CA, LISA MARS, CINDY MARSHALL,
PROPOSED ADMINISTRATOR OF THE ESTATE OF DARIUS MARSHALL, MARIE VEGA,
ANGELO VEGA, PAQE MESUTLLARI, ALEXANDER NYEKAN, GAIL PLAGAINOS, GUSTAV
PLAGAINOS, PHILIP ALLEN WALL, JR., GEORGE ADDE, CHRISTINE SANTORO,
AS ADMINISTRATOR OF THE ESTATE OF JOHN A. VALINSKI, DECEASED, JOHN
LUPTON, CHRISTINE CIALDELLA, JOSEPH LABARBA, MARIE FUCILE, ADMINISTRATRIX
FOR THE ESTATE OF JOSEPH BAGAROZZA, ERIN K. RYAN, ADAM T. RYAN, GRZEGORZ
MATLOK, EUGENE KEOHANE, CATHERINE BRIGHT, HENRY MARINE SERVICE
INC., TIMOTHY SHANAHAN, FAUSTINO DIAZ, LAURA DIAZ, CHRISTINA MARTINEZ,
MICHAEL FREMPONG, WAYNE EVANS, TINA EVANS, JAMES J. MCGARRY, RICHARD A.
REICHARD, NIJEL BELL, EMILIANO NAVARRO, JEFF PALADINO, HAROLD VARGAS,
ZAHIDA MURATOVIC, MUSTAFA MURATOVIC, VICTOR HINKSON, CARLINE BENNUDRITI,

HENRY BENNUDRITI, LANEZ ATHERTON, KATHERINE HEALY, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF JOHN P. HEALY, AND GUARDIAN OF JOHN HEALY, KERRY HEALY, BRIAN HEALY, AND MARY HEALY, ROBERT S. CARROLL, PETER M. MURRAY, PARMENA MACARENO, INDIVIDUALLY AND AS MOTHER AND NATURAL GUARDIAN FOR DENISE ANGULO, MICHELE BALBI, AUDREY-JO ESPOSITO, JOHN JOSEPH HESSION, JOSE PAGUAY, ANTHONY DEREK MOZONE, JAMES MCMILLAN, JR., MICHAEL GRYNBERG, JOCELYN JOSEPH, GIUDELIA VASQUEZ, DAVID VASQUEZ,

*Claimants-Third-Party-Defendants-Appellees,*

RICHARD GODOSKY, ATTORNEY, JOSE PAGUAY, JOHN SCOTT THOMPSON,

*Defendants,*

THE M/V ANDREW BARBERI, ITS ENGINES AND BOILERS IN REM, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. v. IRIS WEINSHALL. SEE DOC # 194., JOHN DOE, #6, AKA DECKHAND NUMBER 7 ON THE M/V ANDREW BARBERI, JOHN DOE, #3, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. v. IRIS WEINSHALL. SEE DOC # 194., AKA DECKHAND NUMBER 4 ON THE M/V ANDREW BARBERI, JOHN DOE, #2, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. v. IRIS WEINSHALL. SEE DOC # 194., AKA DECKHAND NUMBER 3 ON THE M/V ANDREW BARBERI, JOHN DOE, #1, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. v. IRIS WEINSHALL. SEE DOC # 194., AKA DECKHAND NUMBER 2 ON THE M/V ANDREW BARBERI, JOHN DOES, # 7-50, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. v. IRIS WEINSHALL. SEE DOC # 194., JOSEPH ECOCK, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. v. IRIS WEINSHALL. SEE DOC # 194., DAVID HYDE, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. v. IRIS WEINSHALL. SEE DOC # 194., ROBERT RUSH, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. v. IRIS WEINSHALL. SEE DOC # 194., PATRICK RYAN, CAPTAIN, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. v. IRIS WEINSHALL. SEE DOC # 194., JOSEPH SELCH, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. v. IRIS WEINSHALL. SEE DOC # 194., CITY OF NEW YORK, IRIS WEINSHALL, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. v. IRIS WEINSHALL. SEE DOC # 194., NEW YORK CITY DEPARTMENT OF TRANSPORTATION, JOSEPH ALBANO, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. v. IRIS WEINSHALL. SEE DOC # 194., JOHN DOE, #6, AKA DECKHAND NUMBER 7 ON THE M/V ANDREW BARBERI, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. v. IRIS WEINSHALL. SEE DOC # 194., JOHN DOE, #5, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. v. IRIS WEINSHALL. SEE DOC # 194., AKA DECKHAND NUMBER 6 ON THE M/V ANDREW BARBERI, JOHN DOE, #4, RE: THIRD PARTY CLAIM OF J. MCMILLAN, JR. v. IRIS WEINSHALL. SEE DOC # 194., AKA DECKHAND NUMBER 5 ON THE M/V ANDREW BARBERI,

*Third-Party-Defendants,*

THERESA KLINGELE, VITO ORONZO CAPUTO, REAVA SEYMOUR, KIJAFA CRUMBLE, JEROME MANISCALCO, ISMAEL LOPEZ, VICTOR CADICAMO, CRISTINA TORRES, CYRA SIMONE, MARGUERITE BERGIN, INDIVIDUALLY AND AS NATURAL MOTHER AND LEGAL GUARDIAN OF GEORGE BERGIN, BRUCE AGOSTINO, GRANVILLE PALIN, RICHARD BONI, KAREN CATANZARO-LAROSA, ALAN EISENSTEIN, FRANK STEVENS, PAUL STURGEON, NICOLAS LAPIERRE, SANTOS ALVARADO, ETTIE SMITH, INDIVIDUALLY AND AS NATURAL MOTHER AND LEGAL GAURDIAN FOR INFANT STACEY SMITH, DENISE SADLER, JAMES FEHILEY, DANIEL DECHIRICO, RADEK HAZUKA, NADINE RUSSELL, JOHN FRIZZIOLA, PHYLLIS STIVALA-EUGENIO, ERIC HEMPHILL, CLAUDIA LOPEZ, CHARLES PEDERSEN, MATTHEW MCHUGH, CLARESE WILLIAMS, SYLVIA PHILIPS, GORDON WAITE, JANET BORDA, STANLEY MASON, EDWIN JOHN, JESSICA MCDONALD, DINAH WASHINGTON, INDIVIDUALLY AND AS NATURAL MOTHER AND LEGAL GUARDIAN FOR JALIL WASHINGTON, MARLENE FEIN, JOHN DOWNEY, ROBERT SECKERS, WILLIAM MONTGOMERY, YOLANDA HARRIS, IZET ADZEMOVIC, RICHARD SCHEBLEIN, SHIRAM AGNI, IVETTE JONES, JOSEPH MATASSA, JESSICA CALDERON, ADELAIDE SCHEBLEIN, ARUNA AGNI, RONALD SMITH, HECTOR VELEZ, SPIROS VALENTIS, STACEY COPELAND ROBINSON, CARLTON ROBINSON, DESHAWN JOHNSON, DENISE A. VARRIANO-REICHARD, KHADY DIAGNE GUEYE, GLADYS MEDINA, ROSS WELSICK, JR., DIANE NAMBA WELSICK, EDWIN ORTIZ, CAROLINA ORTIZ, JAMES E. RYAN, STEVEN PARKER, TANIA JASMIN, SAJAN GEORGE, ALIMA SMITH, MARILYN COX, DEBRA O'NEIL, SHELTON FRANCIS, TRACY FRANCIS, ANTHONY ELMORE, ALAN ANDRADE, YEHOSHEBA EMANYAH TSHAT YISRAEL, DESIREE HOWELL, DESIREE HOWELL, THOMAS CHIAPPONE, THOMAS O'BRIEN, CAROL PAPPALARDO, THOMAS MCGUIRE, LIDIA L. BETEGON, JOHN PAPPALARDO, TINA THOMAS, BOB SEESMAN, RICHARD SCHETTINI, DAWN MARIE O'BRIEN, THOMAS KURIAN, INDIVIDUALLY AND AS NATURAL GUARDIAN TO JASMIN TANIA, FRANCENIA ALEXANDER, INDIVIDUALLY AND AS NATURAL GUARDIAN TO REGINA ALEXANDER, HENRY KATZ, PAUL FLECKER, JOAN THOMPSON, ERICA WEEKS, STEVE FULLER, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF CARMEN M. ROCHEL HUERTAS, MINIRA MATEZIC, SABAN MARISENOVIC, HAZIZA MARISENOVIC, ANNAMARIE TROMBETTA, M. AUDREY BIASE, TARA CANINI-MARESCA, AS ADMINISTRATRIX OF THE ESTATE OF THE DECEDENT, PIO CANINI, AND THE DECEDENT'S SPOUSE, DEBRA CANINI, AND THE DECEDENT'S SURVIVING CHILDREN, TARA CANINI-MARESCA, KEITH CANINI AND JOSEPH CANINI AND THE DECEDENT'S SUR-VIVING FATHER, VINCENT FERRANTE, SR., AS ADMINISTRATOR OF THE ESTATE OF VINCENT FERRANTE, JR., DANIEL ENNIS, WILLIAM GREENWOOD, ROBERTO HUERTAS, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF CARMEN M. ROCHEL HUERTAS,

*Claimants,*

CARLOS M. CALDERON, RICHARD S. WEISMAN,

*Respondents,*

TORGAN & COOPER, P.C.,

*Interested Party.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ...........................................................1

POINT ONE

    NEITHER APPELLEE CITES ANY PRECEDENT FOR THE
    RECOMMENDATION TO REDUCE THE FEE AWARD BY
    OFFSETTING WHAT DESIGNATED COUNSEL'S
    RECOVERIES WOULD HAVE BEEN CHARGED...................................8

POINT TWO

    NEITHER APPELLEE ACKNOWLEDGES THAT THE
    REPORT AND RECOMMENDATION APPLIES THE
    OFFSET FOR APPELLANTS CLIENTS' BENEFIT TWICE...................13

POINT THREE

    APPELLEES MIS-STATE APPELLANTS' POSITION
    REGARDING THE CALDERON AND COCHRAN OFFSETS ...............15

POI NT FOUR

    APPELLEES INCORRECTLY ARGUE THAT THE FEE
    AWARD WAS THE RESULT OF AN ENHANCED
    LODESTAR CALCULATION ...................................................................15

POINT FIVE

    APPELLEES INCORRECTLY ARGUE THAT THE AWARD OF
    THE FEE FOR THE COST OF APPELLANTS' FEE COUNSEL
    SHOULD BE DETERMINED BY LODESTAR STANDARDS ...............17

POINT SIX

    THE COCHRAN FIRM FAILED TO ARGUE
    CAUSATION BELOW ................................................................................22

POINT SEVEN

    THE COCHRAN BRIEF CITES NO ERROR IN THE
    WAIVER OR THE ESTOPPEL RULING....................................................25

POINT EIGHT

    THERE IS NO LOGICAL REASON TO EXEMPT CERTAIN
    VICTIMS' COUNSEL FROM CONTRIBUTING TO LIAISON
    AND MARITIME COUNSEL FEES ..........................................................27

POINT NINE

    THE FEE AWARD SHOULD AT LEAST EQUAL THIS
    CIRCUIT'S MEDIAN MULTIPLIER, INCREASED BY THE
    APPELLANTS' ACTUAL COST OF THE FEE LITIGATION
    WITH NO OFFSETS FOR THEIR OWN CLIENTS..................................29

CONCLUSION ....................................................................................................32

APPENDIX A

# TABLE OF AUTHORITIES

**Federal Cases**

Cole v. Hall, 376 F. Supp. 460 (E.D.N.Y. 1974) .......................................................19

Donovan v. CSEA Local Union 1000, American Federal of State, County and
  Municipal Employees, AFL-CIO, 784 F.2d 98 (2d Cir. 1986) ...........................19

Gagne v. Maher, 594 F.2d 336 (2d Cir. 1979) ............................................ 19, 20, 21

Grendel's Den Inc. v. Larkin, 749 F.2d 945 (1st Cir. 1984) .......................... 5, 6, 30

Hensley v. Eckerhart, 461 U.S.  424, 103 S.Ct. 1941 (1983) ........................... 30, 35

In Re Thirteen Appeals Arising Out of San Juan Dupont Hotel Fire Litig.,
  56 F.3d 295 (1st Cir. 1995) .................................................................................5, 6

Air Crash Disaster at Florida Everglades,
  549 F. 2d 1006 (5th Cir. 1977) ..................................................................... passim

Liberty Mutual Ins. Co. v. Commercial Union Ins. Co.,
  978 F.2d 750 (1st Cir. 1992) ....................................................................................6

Millea v. Metro North, 658 F.3d 154 (2d Cir. 2011) ..............................................17

Monteagudo v. Asociacion de Empleados Del Estado Libre Asociado
  de Puerto Rico, D. Puerto Rico 2006, 425 F. Supp. 2d 206 ................................22

New York State Association for Retarded Children v. Carey,
  1711 F.2d 1136 (2d Cir. 1983) .............................................................................17

Nunez-Nunez v. Sanchez-Ramos, D. Puerto Rico, 2006,
  419 F. Supp. 2d 101 ..............................................................................................22

Rein v. Socialist People's Libyan Arab Jamahiyira, et al.,
  568 F.3d 345 (2d Cir. 2009) ...............................................................................2, 5

Scott v. City of New York, 643 F.3d 56 (2d Cir. 2011) ..........................................17

Smiley v. Sincoff, 958 F.2d 498 (2d Cir. 1992) .................................... 12, 27, 31, 32

<u>Sprague v. Ticonic National Bank</u>, 307 U.S. 161, 595 Ct. 777,
    83 L.Ed. 1184 (1939)...................................................................................29

**State Cases**

<u>Golfo v. Kycia Associates, Inc.</u>, 45 A.D.3d 531,
    845 N.Y.S.2d 122 (2d Dep't 2007) ......................................................25

<u>Nassau Trust Co v. Montrose Concrete Products Corp.</u>,
    56 N.Y.2d 175 (1982)..........................................................................25

**Federal Statutes**

46 U.S. C. § 181 et seq................................................................................2

46 U.S.C. § 30501 et seq.,..........................................................................2

**Federal Rules**

F.R.A.P. Rule 28.1(f)(3) ............................................................................1

F.R.C.P. Rule 72(b)(2) .............................................................................22

**Other Authorities**

<u>Preliminary Reflections in Administration of Complex Litigations</u>,
    2009 Cardozo L. Rev. De Novo 1 (April 1, 2009)............................3, 9

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**
------------------------------------------------------------x
In the Matter of the Complaint of              **Docket No: 12-687**
THE CITY OF NEW YORK, as Owner and
Operator of the M/V ANDREW J. BARBERI,
------------------------------------------------------------x

## PRELIMINARY STATEMENT

This appeal results from the Order of Hon. Edward Korman, Sr. U.S.D.J., dated January 19, 2012, adopting the Report and Recommendation of Magistrate Judge Viktor V. Pohorelsky, dated December 2, 2011, to award certain compensation to the law firms of Bosco, Bisignano & Mascolo (hereafter "BBM"), and Dougherty, Ryan, Giuffra, Zambito & Hession (hereafter "DRGZ&H"), for their work as Liaison Counsel and Maritime Counsel, respectively, (hereafter "Designated Counsel"), in the litigation which resulted from the October 15, 2003 crash of the Staten island Ferry ANDREW J. BARBERI.  Appellants BBM and DRGZ&H served and filed their brief on May 30, 2012.  Appellees, Weisman & Calderon LLP and Appellees, Cross-Appellants, The Cochran Firm, served and filed their briefs on August 31, 2012.  Appellants' Response and Reply brief is served and filed herein.   Pursuant to F.R.A.P. Rule 28.1(f)(3), Appellants will reply to both Appellees' briefs and respond to the cross-appeal in a single Response and Reply Brief.

Appellee Calderon, in particular, contends that Appellants have failed to show any abuse of discretion by the District Court relating to the issues to which they object on appeal.   Quite the contrary, each of the Recommendations which are the subject of this appeal are clearly arbitrary, contrary to settled law and based on a misunderstanding of the facts and erroneous reasoning.   Consequently, they must be reversed.   Rein v. Socialist People's Libyan Arab Jamahiyira, et al, 568 F.3d 345 (2d Cir. 2009).

For example, the Report and Recommendation reflects a serious misunderstanding of the effect of Maritime Counsel's efforts on the benefit conferred to the victims of the BARBERI crash.   Magistrate Pohorelsky found that "unlike class actions, where the efforts of lead and liaison counsel typically result in the creation of a common fund from which a percentage may be extracted to pay their fees, the efforts of lead and liaison counsel here only established liability.   The efforts of the movants thus did not create a common fund from which a fee could be extracted, nor did it end the litigation" (A 927).   This finding fails to recognize that the efforts of lead and maritime counsel not only established the City's liability for the BARBERI crash, but also established that the City could not limit its liability to the post accident value of the BARBERI itself, pursuant to the U.S. Limitation of Liability Act (46 U.S.C. § 30501 et seq., formerly 46 U.S. C. § 181 et seq.). Therefore, contrary to the magistrate's misunderstanding, beyond creating a finite

sum based upon the post-accident value of the vessel to pay all the damages, (approximately $14 million dollars), Maritime Counsel actually created an unlimited fund where the only limitation on recoveries were the victims' provable damages.  Furthermore, although the claimants' litigation may not have ended with Maritime counsel's success in defeating limitation and establishing liability, private counsel were then required to carry only the limited burden of proving the victims' individual damages, for which they were to be compensated from an unlimited common fund, while also deriving huge savings in the costs of the litigation, where discovery, development of expert evidence, trial and appeal, were all successfully performed by Maritime Counsel.  Please see Jack B. Weinstein, <u>Preliminary Reflections in Administration of Complex Litigations</u>, 2009 Cardozo L. Rev. De Novo 1, 17-18 (April 1, 2009).

Also, despite the Magistrate's further misunderstanding, the task to Maritime Counsel became no easier when the City's employees' guilty pleas in the criminal cases were entered (A 943).  Maritime Counsel's summary judgment motion, based on those pleas, was denied.  Thereafter, full-blown discovery was required, followed by a bench trial on written submission, which resulted in findings of liability and denying limitation of liability.  Those findings were then upheld through Maritime Counsel's successful efforts after the City's appeal to this Court. This successful "post-plea" effort of Maritime Counsel absorbed nearly two

thousand hours of counsel's time, extending from late 2005 to March 2008 (A 913, 914). This work cannot have been due to a task made easier by the guilty pleas. Furthermore, the method used by the Magistrate Judge to calculate the amount of the award which was apparently a combination of lodestar and graduated percentages (A 933-943, 949, 953), was arbitrary, contrary to settled law and constitutes an abuse of the district court's discretion in setting the fee.

Additionally, the offset for Designated Counsels' private clients was erroneously applied by the Magistrate, not only once, but twice, so the net fee award was not an enhancement of the lodestar base, as the Magistrate recommended, but in actuality resulted in a reduction of the lodestar base, either of which result was unconscionably below the median awards made in this Circuit for this kind of work, and despite the great tangible benefits conferred by Designated Counsel's efforts on behalf of the crash victims and their attorneys.

The award was further arbitrarily reduced by not allowing the Appellants their full out of pocket expenses of this fee litigation, by also not making some allowance for Appellants' considerable time and effort expended on this dispute, and by charging for some minimal common benefit work performed by two other law firms (Calderon and Cochran), exclusively to Designated Counsel as an offset to their fee award, and not to all other counsel who received that same benefit.

Finally, although not affecting the quantum of the award, since the Recommendation attempted to award a fixed amount to be charged to a limited group of claimants' (A 949, 950, 953), certain classes of the victims were also arbitrarily excluded from making any contribution.

Accordingly, it was an abuse of discretion by the district court to adopt these Recommendations for the reasons set forth in Appellants' Brief, generally, and as further argued herein.

While Circuit Courts rightfully defer to the discretion of the district court when considering an appeal of a fee award, they will examine a fee appeal in greater depth than usual when it presents novel problems or claims. Grendel's Den Inc. v. Larkin, 749 F.2d 945 (1st Cir. 1984). Such novel problems clearly exist here. In addition to its de novo review of components of the method employed by the district court in calculating the fee award, In Re Thirteen Appeals Arising Out of San Juan Dupont Hotel Fire Litig., 56 F.3d 295 (1st Cir. 1995), as well as the mandate to correct the clear misunderstanding of the facts and defective reasoning upon which the award was based, Rein v. Socialist People's Libyan Arab Jamahiyira, (supra), this Court is confronted with a question novel to this type of litigation. As Senior Judge Weinstein sitting in the Eastern District of New York has recognized: how does the district court determine what a reasonable fee for Lead or Liaison Counsel and Maritime Counsel should be in complex, multi-tort admiralty litigation, where a

petition to severely limit the defendant's liability has been filed; where there is no statutory right to a fee award from an adversary; where there is no concern that the fee award will diminish the compensation available for the victims' damages, and hence no public policy requiring that the lodestar method be used and lodestar time records be maintained; where the risk of failure means the difference between a woefully inadequate fund for victims' compensation with little fee available for Designated Counsel, versus an unlimited fund defined only by each victim's provable damages; and where private counsel need only prove the victims' individual damages to earn their usual one-third retainer fee. These novel questions compel this Court to examine the issues presented by this appeal de novo, and to provide its guidance to the district courts within the Circuit in response thereto, Grendel's Den, Inc., (supra).

Additionally, since many of the Recommendations which are the subject of this appeal comprised significant components of the formula employed by the Magistrate Judge to calculate the award, this Court should also review these recommendations de novo.  In re Thirteen Appeals arising Out of San Juan Dupont Plaza Hotel Litig, 56 F.3d 295 (1st Cir. 1995); Liberty Mutual Ins. Co. v. Commercial Union Ins. Co., 978 F.2d 750 (1st Cir. 1992).

Appellant, Cross-Appellee, Cochran argues additionally that Designated Counsel had agreed to perform their services without compensation.  This is the

very same issue which was the subject of the Evidentiary Hearing before Magistrate Pohorelsky on June 24 and 25, 2010, and which was rejected by the Magistrate Judge in the Report and Recommendation (A 919-926).  Cochran also argues, for the first time in this appeal, that Designated Counsel have failed to prove a causal relationship between their services and any benefit derived by The Cochran Firm clients.  Therefore, The Cochran Firm argues that Designated Counsel should receive no fee award, or alternatively, that The Cochran Firm should be exempt from contributing to any fee awarded to Designated Counsel.

Both arguments are without merit.   As shown below, (Points Six and Seven), the Cochran cross-appellants have failed to point to a single error by the Magistrate Judge in recommending that the District Court find that Designated Counsel had neither waived nor were they estopped from claiming compensation for their work. Also, since the Cochran Firm did not raise the causation issue in the District Court, and did not object to the recommendation on causation, hornbook law prohibits them from raising it for the first time on appeal.   Consequently, the issues which The Cochran Firm attempts to raise as cross-appellants should be rejected by this Court. Its cross-appeal should be denied in its entirety.

## POINT ONE

## NEITHER APPELLEE CITES ANY PRECEDENT FOR THE RECOMMENDATION TO REDUCE THE FEE AWARD BY OFFSETTING WHAT DESIGNATED COUNSEL'S <u>RECOVERIES WOULD HAVE BEEN CHARGED</u>

Both the Calderon Brief and the Cochran Brief argue that under the rule established by the Fifth Circuit in the <u>Air Crash Disaster at Florida Everglades</u> case, 549 F. 2d 1006 (5th Cir. 1977), the District Court was correct to reduce the fee awarded to Designated Counsel in the BARBERI case by offsetting the amount which Designated Counsels' own clients' recoveries would otherwise have been charged under the recommended formula (Calderon 13, Cochran 56).  Both argue that the <u>Air Crash Disaster at Florida Everglades</u> case permits the District Court to take the number of Designated Counsel's individual cases into account when considering what compensation should be awarded to them.  The Calderon brief even goes so far as to contend that without an offset, Designated Counsel will be unjustly enriched for the work they performed for others' benefit, while completely ignoring the fact that Calderon did almost none of the liability portion of his own case[1], and , as Judge Weinstein specifically recognized, "only had the limited burden of proving individual damages of injured or killed passengers," to earn his one-third retainer fee, which "does not account for the huge savings in transactional costs in

---

[1] The Magistrate Judge found that Calderon performed approximately eight (8) hours common benefit work in this case (A 948).

effectively administered litigations with centralized discovery, development of expert evidence, and the like." Weinstein, Preliminary Reflections on Administration of Complex Litigations, 2009 Cardozo L. Rev. DeNovo 1, 17-18 (April 1, 2009). Appellees also ignore the Fifth Circuit Court's finding in the Air Crash Disaster case that it is the non-committee lawyers who are unjustly enriched if they are excused from contributing a reasonable portion of their fees to compensate Designated counsel for their work (In re Air Crash Disaster, Committee counsel was awarded 8% of the total recoveries, with no offsets for Committee members' own clients, Air Crash Disaster, supra at 1011). That principle applies here as well. As the Calderon firm likely reaped a fee of three million dollars on their individual case (Tina and Wayne Evans, settled for 9 million dollars, Calderon Brief, p. 5), they are clearly far more "unjustly enriched" than Designated Counsel may be by significantly increasing the award which was adopted by the District Court here.

Appellees also ignore that in the BARBERI case, the actual compensation to Designated Counsel is a miniscule 1.26 percent of the recoveries (or 1.11 percent, when the actual cost of the fee litigation is deducted), while Calderon and Cochran are allowed to retain 31.74 percent of their recoveries, or greater, where they "only had the limited burden of proving individual damages of injured or killed passengers." Weinstein, Preliminary Reflections on Administration of Complex Litigation, (supra). Again, this hardly suggests that Designated Counsel will be

9

unjustly enriched or will receive a "golden harvest of fees" (A 928), if their fee award is increased by correcting the mistakes in methodology and resetting the multiplier to be used.

In Air Crash, in discussing the principles underlying the use of lead and liaison counsel in complex, mass-tort cases, the Fifth Circuit Court noted that since the Committee members had 60 cases of their own, "Appellants ask, 'why pay them for doing what they would have done anyhow on behalf of their own clients?' The Court responded:

> "This is too simplistic. It is uncertain that appellants or any other plaintiff lawyers would have been able to conduct prompt, orderly, precise and fruitful discovery if there had been a multitude of diligent lawyers pushing for the front seat and the maximum advantage. The Committee members' 60 cases may affect the amount paid them as lead counsel, but not the power of the court to require payment. In the next case the best available lead counsel may have one case out of 100." [or two out of over 150, as Maritime Counsel had in the BARBERI case].

The Court then found

> "The argument that lead counsel are paid twice for the same work overlooks what the district court did not overlook: the broader responsibilities that lead counsel bear and the larger interests that they serve. Because of the nature of the case that will trigger appointment, lead counsel's services are in part for all parties with like interests and their lawyers. To a degree, lead attorneys become officers of the court." Air Crash Disaster, supra at 1017.

10

Indeed, when considering the argument that Lead Counsel may somehow become unjustly enriched by the Court ordering non-Committee members to pay for their services, the Air Crash Disaster Court also found:

> After careful scrutiny of such conscientious execution of appointed counsels' preparation of the plaintiffs' case, this Court is constrained to observe that if, in fact, an element of unjust enrichment exists in the Court's percentage award of attorneys fees, the beneficiaries are the attorneys whose time was not so consumed in the manner outlined above, but who shall receive all but eight percent (8%) of the attorneys fees[2] originally contemplated by them. Air Crash Disaster, supra at 1011 (emphasis added).

While it is true that the Court in Air Crash Disaster noted, in dictum, that the number of cases held by Committee members might affect the amount they are paid as lead counsel, it is more important to note that, in that case, in response to a request for a fee of 10% of the settlements received by the plaintiffs, other than those by whom the committee members had been retained, the District Court awarded, and the Circuit Court affirmed, compensation equal to a full eight percent (8%) of the total recoveries (including $60,411 expenses) in a case which settled after discovery was concluded, and the court did not require any offset from the total award to account for committee members' 60 clients, Air Crash Disaster, supra at 1010, 1011.

By comparison, in the BARBERI litigation, expenses of $50,650 were paid through an independent fund administered by BBM, (A 935,  n.16), and the

---

[2] The Court was obviously referring to a fee to non-committee lawyers reduced by eight percent (8%) of the total recoveries.   Air Crash Disaster, supra at 1010.

District Court awarded fee compensation equal to a mere 1.26% of the total recoveries, after deducting the offsets for Designated Counsel clients' recoveries, or 1.11% of the total recoveries when the actual legal costs of the fee litigation are also deducted.   This was despite the fact that the BARBERI case was successfully tried, non-jury, after full discovery, including fact and expert depositions were completed, creating an unlimited fund to compensate the claimants, which was affirmed on appeal to this Court, all the while being opposed by the City's extremely able maritime counsel (A 938).   This unconscionable result simply cannot stand. Neither the Recommendation nor the Appellees have cited any authority or case precedent for the offsets made in this case.   They further ignore this Court's ruling in <u>Smiley v. Sincoff</u>, 958 F.2d 498 (2d Cir. 1992), in which Committee members were not required to contribute any portion of their fees to the fund, and were awarded a fee not to exceed eight percent (8%) of the gross recovery and could not exceed one-half of the total attorneys' fee collected for each claim.    <u>Smiley</u>, 958 F.2d at 500 (supra).

The recommendation and the order adopting this formula are contrary to settled law; they are arbitrary and the recommendation is based on erroneous reasoning and flawed methodology.   The order adopting it should be vacated by this Court, and an award at least equal to the median lodestar multiplier used in this

Circuit in similar litigation should be made, without any offset for Designated

Counsel's clients or reduction in the actual cost of the fee litigation.

## POINT TWO

### NEITHER APPELLEE ACKNOWLEDGES THAT THE REPORT AND RECOMMENDATION APPLIES THE OFFSET FOR APPELLANTS CLIENTS' BENEFIT TWICE

Both the Calderon and Cochran briefs argue that the District Court was

correct to offset the cost of the benefit to Appellants' individual clients from the

award for Appellants' work as Liaison Counsel and Maritime Counsel.   Appellants

contend that there is no precedent for this offset, and the offset is contrary to settled

law and should be reversed (Reply Brief Point One, Appellant Brief pp. 13, 14).

Additionally, Appellees fail to recognize that the Recommendation actually applied

an offset to Appellants' fee award for their individual clients twice: once by reducing

the total compensation in the amount of $1,581,061.56 (A 953, 954) to the net sum

of $1,107,421.21, (when BBM's charges and DRGZ&H's charges are deducted

from the total)[3] and again when the Report and Recommendation reasoned that the

low amount of the recommended award (which the Magistrate recognized was set at

the "bottom end of common multipliers" when compared to the average lodestar

multiplier employed in this Circuit (A 954),   "permits the court to take account of

---

[3] The Recommendation noted that after deducting the 10% added for attorneys fees in making this motion, "the actual total compensation is $1,437,328.69" (A 953, 954).   Accepting that as being so, then the offsets for Designated Counsel reduce the award to a mere $967,688.27. Please see Appendix "A"

the fact that the movants themselves reaped benefit from their work since they represented clients from whom they obtained fees based on the ultimate outcome of the damages claims made by their clients." (A 928).   Consequently, the Magistrate Judge, by calculating an award based on what he believed to represent an enhancement on the lowest end of multipliers to take into account that Appellants' had clients of their own, from whom they were paid a fee, and then also requiring that the portion of the fee award which would have otherwise been charged to Appellants' individual clients be offset from the fee award in order to account for the fact that Appellants' clients also benefitted from Appellants' work, in actuality charges Appellants twice for the same thing: that they   had their own clients from which they were paid a fee for the work they performed on those clients' behalf and to their benefit.   This clearly flawed reasoning cannot stand, particularly when Appellants award should not have been offset and charged on this account at all.

There is no justification or authority for applying the offsets in the first place, and there certainly is no possible justification for applying a reduction twice.   It is simply inexplicable.   The monetary reduction for Bisignano and DRGZ&H's portion of the fee award should be vacated and the charges to the victims' counsel at minimum should be adjusted proportionately to absorb the $469,640.42 in offsets which the Report and Recommendation requires.   Additionally, the fee

award should be adjusted <u>sua</u> <u>sponte</u> to at least be equivalent to the median lodestar multiplier used in this Circuit for similar complex litigation (A 954).

## POINT THREE

### APPELLEES MIS-STATE APPELLANTS' POSITION REGARDING <u>THE CALDERON AND COCHRAN OFFSETS</u>

Both the Calderon and Cochran briefs contend that Appellants object to any offset being allowed to Calderon or Cochran for the common benefit work their firms performed (Calderon 23, Cochran, 57).  Appellants' actual position is that any common benefit work those firms performed, if compensable at all, should be charged to all victims' counsel equally, since all counsel theoretically benefitted, and not solely to the BBM and DRGZ&H firms (Appellants Brief pp. 33-35).  Although, as the Calderon brief points out, these offsets are modest (Calderon Brief 23), these offsets are also another example of a clearly erroneous and arbitrary recommendation which is contrary to settled law.   This recommendation should not have been adopted, and it requires reversal also.

## POINT FOUR

### APPELLEES INCORRECTLY ARGUE THAT THE FEE AWARD WAS <u>THE RESULT OF AN ENHANCED LODESTAR CALCULATION</u>

Both the Cochran (p. 42) and Calderon (p. 9, 10) briefs contend that the Report and Recommendation calculates the total recommended fee to Liaison

Counsel and to Maritime Counsel by using an "enhanced Lodestar calculation," and that Appellants have not appealed from that decision.

In fact, although clearly misunderstanding the actual benefit conferred on the claimants by the work of Designated Counsel (supra p. 2), and although the Magistrate Judge expressed an intention to use the lodestar method (A 927, et seq.), he ultimately ended up calculating the award by using an unprecedented structured percentage of recovery method (A 953), which he compared with a lodestar base he calculated, and then erroneously concluded that the graduated percentage of recovery method he used "reflects a lodestar multiplier of 1.25 which is at the lowest end of multipliers commonly applied in this circuit" (A 954). This combined method to calculate the fee award is again without precedent and contrary to existing law.   It therefore comprises an abuse of discretion by the district court in setting the fee award.   As explained in Appellants' main brief and again below, the finding that the award reflects an enhanced lodestar base is also clearly erroneous.   The mathematics are incorrect.   The lodestar comparisons are in fact either 0.964 and 0.848 or 0.842 and 0.726 if the offsets for BBM and DRGZ&H, plus the reduction in the cost of the fee litigation are applied to "the total compensation in the amount of $1,581,061.56" or to "the actual total compensation [of] $1,437,328.69" (A 953, 954, Appellants' Brief, 15, Reply, 10).   All are negative multipliers, when the recommended offsets and the reduced compensation for the costs of the fee litigation

are taken out of the award.[4]   That is the basis for Appellants' appeal in this case, as well as Appellants' argument that even an award with the recommended multiplier is unconscionably low and contrary to settled law, even had it been correctly applied. Furthermore, since the fee award was not in fact calculated by the lodestar method, and lodestar was used merely as a cross check, all Appellees' arguments about the lodestar calculations, the so-called multipliers which should be applied, and the effect of the failure of the BBM firm to maintain contemporaneous billing records, are entirely irrelevant and should be ignored.[5]

## POINT FIVE

### APPELLEES INCORRECTLY ARGUE THAT THE AWARD OF THE FEE FOR THE COST OF APPELLANTS' FEE COUNSEL SHOULD BE DETERMINED BY LODESTAR STANDARDS

Both Appellees contend that the Report and Recommendation was correct to limit the award of the cost of the fee litigation to ten percent of the fee awarded, despite clear and unrebutted evidence that the Appellants' actual cost would be

---

[4]  $\$1,107,421.14 \div \$1,148,547.50 = 0.964$, and $\$974,299.71 \div \$1,148,547.50 = 0.848$ (based on the "total compensation of $\$1,581,061.56$"); $\$967,688.27 \div \$1,148,547.50 = 0.842$ and $\$834,565.84 \div \$1,148,547.50 = 0.726$ (based on "actual total compensation of $\$1,437,328.09$") (A 953, 954).

[5] When used as a cross check, billing records need not be precise (A 931, citing Goldberger, 209 F.3d at 50). Even had the lodestar method been used, Appellees objections are based on principles of statutory fee reversal cases whose principles do not apply here (A 931).   (See, also e.g. Scott v City of New York, 643 F.3d 56 (2d Cir. 2011); Millea v. Metro North, 658 F.3d 154 (2d Cir. 2011), New York State Association for Retarded Children v. Carey, 1711 F.2d 1136 (2d Cir. 1983).

twenty five percent of their award (Calderon Brief 21, Cochran Brief 42).   The Appellees argue that since the Magistrate Judge held Appellants' Fee Counsel, Godosky & Gentile, to the lodestar standards which are employed in statutory fee shifting cases, and since Godosky & Gentile did not maintain contemporaneous billing records, Appellants' allowance for the actual cost of the fee litigation was properly reduced.

Appellees ignore the fact that the authority upon which they rely to make this argument is not applicable.   As Magistrate Pohorelsky himself recognized, the jurisprudence in this Circuit which requires detailed contemporaneous billing records to support a fee application all deal with cases involving "statutory fee shifting cases in which the liability for an attorney's fee is being imposed on an adversary." (A 930).

> "In such cases, it is appropriate to be exacting in requiring support for the fee being requested, because the payment obligation is being imposed on one who has received no benefit from the attorney's services.  Here, of course, the opposite is true – payment is being sought from those who have been enriched by counsel's efforts, and who are simply being asked to pay over a relatively small portion of the amount by which they have been enriched to compensate counsel who helped make that possible.  Moreover, because there is no statute prescribing a fee award here, unlike Carey and Scott, the court makes its fee award on the basis of equity, and should be guided by equitable principles" Citing Monaghan, 154 F.R.D. at 84 n.2d ("it must be remembered that this Court may award attorneys' fees solely on the basis of its inherent equitable powers.") (citing Chambers v. NASCO, Inc., 501 U.S. 32 (1991)); see also Hensley, 461 U.S. at 437-38 & 438 n. 13 (1983).   Id. (emphasis added).

The Magistrate also recognized:

"For the same reason as they are entitled to fees for their role as Maritime Counsel, the movants are entitled to reasonable counsel fees for the costs of litigating the fee application motion.  As discussed above, the purpose of granting fees to the movants here is to encourage counsel to take on the considerable responsibilities of serving as liaison and maritime counsel for the common benefit.   To deny them fees for the expenses they had to undertake to ensure that they received appropriate compensation would encourage objectors to raise meritless objections to a request for fees" [as was done here, Appellants submit] (R&R 33,34), citing Cole v. Hall, 376 F. Supp. 460, 462 (E.D.N.Y. 1974) ("The challenge to his fee is a matter of public concern and it is in the public interest that he be compensated for the services rendered in the protection of his fee"); also citing Cruz, 34 F.3d at 1161 n.9 (noting that on remand the plaintiff's counsel also "may well be entitled to receive compensation for the reasonable amount of time [he] spent in preparing the plaintiff's fee application."), and C.F. Gagne v. Maher, 594 F.2d 336, 344 (2d Cir. 1979) ("denying attorneys' fees for time spent in obtaining them would dilute the value of a fee award by forcing attorneys in extensive uncompensated litigation in order to gain any fees").

The Recommendation also correctly noted that:

"There is also no danger that the award of fees for the fee application would harm the claimants' interests in a common benefit case like this one.  In Pawlak v. Greenawalt, the Third Circuit held that, in a non-statutory fee case, the costs of litigating disputes about fees would be awarded to common benefit cases but not common fund cases.   713 F.2d at 982-83.   The distinction was due to the fact that in a common fund case, the award of such a fee would deplete the plaintiff's recovery.   On the other hand, in the common benefit cases, the additional cost would not affect the plaintiff's net recovery, but rather comes out of their attorney's recovery.   Likewise in Donovan, the Second Circuit also found that unlike in common funds cases, there was no conflict of interest between an attorney and his client in a common benefit case because the fund would not be depleted by an award of attorney's fees.   Donovan v. CSEA Local Union 1000, American

Federal of State, County and Municipal Employees, AFL-CIO, 784
F.2d 98, 106 (2d Cir. 1986)" (A 944 FN 21).

In requiring that counsel in statutory fee shifting and common fund cases
demonstrate contemporaneous billing records to support a fee application, the courts
were rightfully protecting the interest of the class against the unreasonable
diminution of a common fund, or were concerned that the fee was to be charged to
the adversary who had derived no benefit from the work. Here, there are no such
interests for the court to protect, as the Report and Recommendation fully
recognized (A 930, 931).

The fee awarded to Liaison Counsel and to Maritime Counsel, including any
reimbursement of their expenses for fee litigation, will come solely from the fees of
private counsel who were spared the burden of defeating a limitation petition and
proving liability, and will not diminish or reduce the ferry victims' recoveries in any
way. However, by not allowing Appellants the actual cost of the fee litigation,
despite the clear direction of this Court in the Cruz and Gagne v. Maher cases,
(supra) that this should be allowed, the Recommendation further diminishes the fee
award to Liaison Counsel, such that, in addition to the $469,640.42 improperly
offset for their own clients' share of the award, and employing the lowest multiplier
for the same reasons, they now face a third reduction equal to $133,122.43

($1,107,421.24 x .25 = $276,855.30 - $143,732.87 = $133,122.43) [6], as the unrebutted evidence establishes that Liaison Counsel is being charged 25% for attorneys' fees. Such arbitrary reduction further diminishes Liaison and Maritime Counsel's net fee for their work to $974,298.82, and not $1,581,061.56 as the Magistrate Judge mistakenly reports (A 953), or 84.8 percent of the lodestar base and a mere 1.11 percent of the total recoveries. This result is so shockingly low as to be arbitrary per se. This Court should vacate the award, and sua sponte impose an award at the very least equal to the 3.1 median lodestar multiplier used in this Circuit in similar complex litigation (A 954), without any offset for Liaison and Maritime Counsel's clients, plus a twenty-five percent enhancement to simply

---

[6] Accepting Mr. Gentile's estimation that his firm expended approximately 1,000 hours in the fee litigation for which they are to be paid twenty-five percent of the fee award equates to a rate of $276 per hour for their work ($1,107,000 net fee to Designated Counsel times 25%=$276,750 divided by 1,000 hours = $276.75 per hour). This is clearly within the range of the "reasonable counsel fees for the costs of litigating the fee application motion" (A 943). Adopting the Recommendation to award Designated Counsel an amount equal to ten percent (10%) of the fee award to compensate for the costs of litigating the fee application equates to an $110 hourly rate for fee counsel, if Gentile's 1,000 hour estimate is accepted ($1,107,000 net award times 10% equals $110,700 divided by 1,000 hours equals $110.70 per hour). This is a clearly unreasonable rate to expect fee counsel in New York City to have charged for their work, and it is arbitrary and unreasonable to allow Designated Counsel only this sum for the costs of litigating the fee application. Additionally, it does not take into consideration the time expended by BBM and DRGZ&H themselves in litigating the fee application, which directly contravenes the rule set forth by this court in Cruz, 34 F.3d at 1161 n. 9 and Gagne, 594 F.2d at 344. At minimum, Designated Counsel should be allowed its actual counsel fees as its cost for litigating the fee application: twenty-five percent (25%) of the eventual award.

reflect Designated Counsel's out-of-pocket costs for attorneys' fees for this fee litigation.

## POINT SIX

## THE COCHRAN FIRM FAILED TO ARGUE CAUSATION BELOW

Comparing the Cochran Brief at pages 52 through 54, with its December 15, 2011 letter improperly sent to the Clerk of the Court of the Eastern District (docket no. 1080 and 1097), which purportedly registers Cochran's objections to the Report and Recommendation pursuant to F.R.C.P. Rule 72(b)(2), discloses that The Cochran Firm never objected to that portion of the Recommendation which found that private counsel and their clients benefitted from Designated Counsels' work (A 951-953, A. "Who Should Pay").  Consequently, since they never preserved that issue for appeal they cannot be heard on that issue by this Court.  Monteagudo v. Asociacion de Empleados Del Estado Libre Asociado de Puerto Rico, D. Puerto Rico 2006, 425 F. Supp. 2d 206; Nunez-Nunez v. Sanchez-Ramos, D. Puerto Rico, 2006, 419 F. Supp. 2d 101 (failure to raise objections to magistrate judge's report and recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal).[7]  The

---

[7] Indeed, there is a serious question whether The Cochran Firm preserved its right to object to any portion of the Report and Recommendation, since its objections were made in the form of a letter to the Clerk (addressed as "Judge Parker"), and not as objections to the District Court as Rule 72 requires.

Cochran Firm is therefore precluded from making this argument now, and this Court should not consider it.

In any event, it is clear that Magistrate Judge Pohorelsky and Senior Judge Korman were well-informed about the direct benefit, if not the value, which Liaison Counsel and Maritime Counsel's work conferred on the BARBERI victims and their attorneys in particular who, as stated above, "had only to prove individual damages of injured or killed passengers" (Weinstein supra), and were also well-informed of the extent that they continued to accrue benefit as the Limitation litigation progressed over time.   It should strain this Court's credulity that the Cochran firm would argue that it received no benefit from the work done by Liaison Counsel and Maritime Counsel from October 15, 2003, to March 2006, because Cochran settled its biggest case, Esposito, after the bench trial on liability and limitation of liability issues was completed, but before Judge Korman's decision finding liability and denying limitation of liability was published, that is, literally "while the jury [Judge Korman] was deliberating."   The Magistrate Judge had absolutely no difficulty in resolving the causation issue in favor of Designated Counsel, a decision which should not be disturbed.   Those findings of common benefit by the Magistrate Judge and affirmed by Judge Korman were not erroneous, even had Cochran raised the issue in a timely fashion.   They should be affirmed.

Additionally, The Cochran Firm's argument that it should not be required to contribute to the fee award because the instant fee application was untimely (Cochran Brief 37-41), is truly disingenuous.  The Cochran Firm knew from the outset that Designated Counsel expected to be paid for their work (A 924).  They fail to disclose the fact that formal notices to set a portion of any recoveries were sent by Designated Counsel to all private counsel, including the Cochran Firm, in June 2006 (Movants' FOF 169, 173), and that the Recommendation specifically found that notice of intention to move for fees was given "from the outset" (A 924). Furthermore, the initial fee motion was filed in June 2007, and a meeting in response to the motion was actually hosted by the Cochran Firm at Cochran's office in July 2007.  In light of this type of specific notice, under the New York State Code of Professional Responsibility Section 1.15(b)(4), the Cochran Firm was required to hold funds equal to the amount in dispute in escrow.  Failing to even do that, they are surely not entitled to argue now that it is somehow inequitable for the district court to require them to contribute to the fee award.  As the Cochran Brief at page 4-5 itself states: "the parties who benefitted from Liaison [and Maritime] counsel's efforts are being asked to pay." That is undoubtedly true. The Cochran Firm included.

## POINT SEVEN

## THE COCHRAN BRIEF CITES NO ERROR IN THE WAIVER OR THE ESTOPPEL RULING

The Cochran Brief expends some thirty-eight (38) pages arguing that Designated Counsel either should not be paid for their work because they waived any claim for fees or should be estopped from asserting one (Cochran Brief pp. 3-41). The waiver issue was the primary subject of the two-day Evidentiary Hearing conducted by Magistrate Pohorelsky on September 20 and 21, 2010 (Transcript of hearing generally, Document 1057), yet Cochran fails to cite a single example of error or mistake in law by the Magistrate Judge in concluding that no waiver for compensation by Designated Counsel occurred. On the contrary, after hearing the testimony and reviewing the record, the Magistrate quite easily and reasonably concluded:

> "On these facts, the court cannot find that the movants either agreed not to pursue fees for their efforts or that they waived their right to do so. There is certainly nothing in writing endorsed by any of the movants constituting an agreement in that regard. Under New York law, "waiver requires…the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable." Nassau Trust Co v. Montrose Concrete Products Corp, 56 N.Y.2d 175, 184 (1982). "it may arise by either an express agreement or by such conduct or a failure to act as to evince an intent not to claim the purported advantage," but "cannot be inferred from mere silence." Golfo v. Kycia Associates, Inc., 45 A.D.3d 531, 533, 845 N.Y.S.2d 122 (2d Dep't 2007). Here, there is no evidence that the movants voluntarily and intentionally abandoned any right they may have to seek fees for their efforts as liaison and maritime counsel. The only conduct from which that might be inferred is the silence of the

25

Committee Order on the question of fees, a silence upon which waiver
may not be based.   (A 921)

Likewise, the Cochran brief points to no error or mistake by the Magistrate
Judge with respect to the alleged estoppel issue.   The Recommendation's
well-reasoned conclusion that the Respondents to the fee motion had not proven that
an award for fees should be denied due to waiver or estoppel should also not be
disturbed (A 922-926).   The Cochran Firm should not be allowed to retry the very
issue of Designated Counsel's entitlement to compensation before this Court.   The
Appellees lost on that issue decisively in the District Court.   They failed to preserve
the issue of causation in the District Court, and they have cited no error or mistake in
law by the District Court upon which reversal on the waiver or the estoppel issues
can be based.   The only issue before this Court is the quantum of the compensation
which was awarded to Designated Counsel, and the methods adopted by the District
Court to calculate that sum.

## POINT EIGHT

## THERE IS NO LOGICAL REASON TO EXEMPT CERTAIN VICTIMS' COUNSEL FROM CONTRIBUTING TO <u>LIAISON AND MARITIME COUNSEL FEES</u>

The Cochran brief contends that the District Court's decision to exempt recoveries less than $50,000 from contributing to Designated Counsel's compensation should be upheld because "it is not unusual for courts to exclude smaller damage awards from contributing to the fee award" (Cochran Brief, pg. 57, citing <u>Smiley v. Sincoff</u>, 958 F.2d 498, 500 (2d Cir. 1992).   However, the rationale for the $75,000 exclusion in the <u>Smiley</u> case is easily distinguishable from the facts of the BARBERI case.   In <u>Smiley</u>, an air crash case against Spantax Airlines, McDonnell Douglas and United Airlines, the Warsaw Convention Treaty-Montreal Agreement imposed an absolute, no-fault liability upon Spantax for damages up to $75,000 (<u>Smiley</u>, <u>supra</u> at 499).

Consequently, those whose damages did not exceed $75,000 derived no benefit from the Committee members' work to prove the liability of the defendants, and were properly excluded from contributing.

The same cannot be said in the <u>BARBERI</u> case.   In <u>BARBERI</u>, it is indisputable that virtually <u>all</u> of the victims and their attorneys derived significant benefit from the work performed by the BBM and the DRGZ&H firms.   Even the Appellees recognize this, since they acknowledge that from the very beginning

27

BBM began to coordinate the efforts on behalf of the victims, including disseminating sample pleadings for potential claimants to oppose the City's Limitation Petition, introducing the victims' attorneys to experienced Admiralty counsel for that purpose, and arranging for the prompt inspection of the damaged vessel and the pier it struck at St. George Terminal (Calderon Brief 2, Cochran Brief 6, 7). As more fully described in Appellants' Initial Brief (pages 2-4), the early services of Liaison Counsel and Maritime Counsel were much more extensive than those listed here, but the point is simply this: to exclude a class of the victims' attorneys from contributing to the compensation for Designated Counsel because of the size of a victim's claim, or the date it was settled, is both arbitrary and illogical. Just as the Magistrate Judge recommended charging a graduated percentage of each recovery over $50,000 based on the phases in the litigation after June 1, 2005 when the recovery was obtained, so could the Magistrate have done that for any recovery under $50,000 or obtained prior to June 1, 2005.[8]

Furthermore, it may well be argued that the claimants with smaller claims benefitted even more than those with more substantial claims since the cost of the work required to complete discovery, to defeat a limitation proceeding and to defend that decision before the Second Circuit Court of Appeals would easily have dwarfed the value of the smaller recoveries. Likewise, virtually all victims' counsel derived

---

[8] According to the Report and Recommendation, the total amount of recoveries obtained prior to June 1, 2005 was $3,325,099 (A 950 N. 23).

some benefit from the services provided by BBM and DRGZ&H, regardless of when they settled, if nothing more than guiding them through the esoteric world of Federal Admiralty pleadings so that their claims would be timely filed.    The District Court's decision to exclude victims whose cases settled for less than $50,000 or prior to June 1, 2005, is based on erroneous reasoning, it is contrary to existing law, and it is arbitrary (Sprague v. Ticonic National Bank, 307 U.S. 161, 595 Ct. 777, 83 L.Ed. 1184 (1939) (neither formal appointment by the court nor status as counsel for the beneficiaries is required to qualify for compensation for common benefit work). Although as noted in Appellants' Brief at page 33, and at page 3 supra, this recommendation does not affect the quantum of the award, it is another instance where the Recommendation should not have been adopted because it is contrary to the law, based on flawed reasoning and is clearly arbitrary.

## POINT NINE

### THE FEE AWARD SHOULD AT LEAST EQUAL THIS CIRCUIT'S MEDIAN MULTIPLIER, INCREASED BY THE APPELLANTS' ACTUAL COST OF THE FEE LITIGATION WITH NO OFFSETS FOR THEIR OWN CLIENTS

There is no possible justification for a fee award less than the equivalent of the median lodestar multiplier used in this Circuit in similar complex litigation, nor did the Recommendation offer any such justification, short of the erroneous view that the fact that Designated Counsel also had private clients should be taken into

account when fixing the amount of the award, and a serious misunderstanding of the actual benefit which the victims derived from Appellants' work.

While it is well-settled that appellate courts should give great deference to the district court's decision on what a reasonable fee should be, it is also well-settled that the district court must nonetheless explain the basis for the award sufficiently to enable appellate review, <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 103 S.Ct. 1941; <u>Grendel's Den Inc v. Larkin</u>, 749 F.2d 945 (1st Cir. 1984). Although the reasons for the Magistrate Judge's Recommendation for the unconscionably low award are not sufficiently clear, or are based on misunderstood facts or contrary to the law, here however, the record speaks for itself. Designated Counsel successfully represented the claimants in the Staten Island Ferry Limitation proceedings through all phases of the pleadings, discovery, trial and appeal, all while being opposed by the City's extremely able special admiralty counsel. This representation resulted in the availability of an unlimited monetary fund to compensate the victims of the ferry accident. Now, over five years after Designated Counsel filed their initial motion for an award for fees, and over nine (9) years since Designated Counsel's services on behalf of the victims began, and while all private counsel have long since obtained their fees, Lead Counsel and Maritime Counsel are still waiting to be paid. This injustice should be corrected by this Court now. This Court should vacate the underlying award and at the very least award a

fee award equal to the 3.1 median lodestar multiplier more typically used in this Circuit for similar complex litigation, sua sponte, and make no offset for Liaison and Maritime Counsel's clients.  That sum should also be enhanced by twenty-five percent to reflect Designated Counsel's actual out-of-pocket costs of the instant fee litigation.  Doing so would result in an award in the amount of $4,450,621.56 ($1,148,547.50 x 3.1 = $3,560,497.25 x .25 = $890,124.31 + $3,560,497.25 = $4,450,621.56), which is only five percent (5%) of the total recoveries in this case, and which would still be significantly lower than the fees awarded in In re Air Crash Disaster, the Smiley v. Sincoff and similar cases, for substantially less work and which resulted in less benefit.   It is also substantially less than the thirteen percent (13%) of the individual recoveries which Judge Weinstein ordered to be set aside in the ferry victims McMillan and the Bagarozza cases, in order to secure the eventual fee award to Designated Counsel here.   Finally, this Court should also order that all private counsel's fees for the victims of the BARBERI crash be charged an amount equal to five percent (5%) of each recovery made in order to fund this award.[9]

---

[9] There is no legal precedent or law for charging graduated percentages, based on milestone dates, to fund the fee award.   It was an abuse of discretion to adopt the Recommendation to do so.  A fixed percentage of all recoveries is the only reasonable way the award should be funded. While those who recovered damages earlier in the litigation may not have received the same benefit from Designated Counsel's work as those who recovered damages later, their counsel likewise performed fewer services to the claimants upon which to earn their fees. Consequently, the scale of benefit between Designated Counsel and private counsel remains the same regardless of when the recovery was made. For that reason, it is

## **CONCLUSION**

There is no legal precedent nor reasonable justification in this case for reducing the amount of the fee award by offsetting Appellants' award by a portion of their clients' recoveries.   There is no legal precedent nor reasonable justification in this case for setting Designated Counsel's fee award at the lowest end of the scale to take into account the fact that Designated Counsel also had private clients. Reducing the amount of the fee award twice to account for Designated Counsels' private clients is simply inexplicable.   Since this process comprised a significant component of the method of calculating the Appellants' fee award in this case, it is subject to <u>de novo</u> review by this Court. This Court should vacate those sections of the fee award, and order that the total amount of the award be increased to a sum at least equivalent to the median lodestar multiplier used in this Circuit for similar complex litigation, without reduction or offset.

There is likewise no legal precedent nor reasonable justification for giving the Appellants reduced compensation for the actual expense they were forced to incur to ensure that they were reasonably compensated for their work because of lodestar principles.   This court should also review that portion of the decision <u>de novo</u>, and

---

well-settled that all recoveries should be charged the same percentage.   <u>Air Crash Disaster at Florida Everglades</u>, 549 F.2d 1006 (5th Cir. 1977), <u>Smiley v. Sincoff</u>, 958 F.2d 498 (2d Cir. 1992).

at least award Appellants their actual out-of-pocket costs for this full blown fee litigation, which is twenty-five percent (25%) of the eventual net award.

The decision to offset the fee award by a liquidated amount, plus a diminution factor, to account for Designated Counsel's individual clients, and to then reduce Appellants' actual costs of the fee litigation because of lodestar principles is arbitrary and contrary to existing law, and constitutes an abuse of the District Court's discretion in setting the fee award in this case. These decisions should be vacated and amounts as set forth above should be added to increase the fee award to no less than $4,450,621.56.

The finding in the Report and Recommendation, which the District Court adopted, that total compensation in the amount of $1,581,061.56 is a reasonable award for common benefit work performed by Appellants, even if that was the actual amount of the award, is based on erroneous reasoning and a misunderstanding of the facts. The Recommendation fails to recognize the extremely significant tangible benefits conferred on the victims and their attorneys by Maritime Counsel's success in defeating the City's petition to limit its liability, which specifically resulted in an unlimited fund for compensating the victims of the BARBERI crash, as opposed to a having woefully inadequate fund equal to the post-accident value of the ferry, had limitation of liability been granted. The Recommendation also misunderstands the fact that, rather than making Maritime Counsel's task easier

when the guilty pleas of the City employees were entered in the criminal cases, Maritime Counsel's task actually became more difficult, because the pleas were insufficient to establish the City's liability, or its privity and knowledge with regard to the cause of the accident, or to defeat the City's limitation petition by way of summary judgment.   As a consequence, Maritime Counsel was thereafter required to conduct full blown discovery in this case, including obtaining fact and expert witness testimony; successfully conduct a full non-jury trial on liability and limitation issues, and then successfully defend a favorable decision by the district court on appeal to this Court.   This effort, success and great benefit should be reflected in a fee award to Designated Counsel no less than the median lodestar award made in this Circuit for similar complex litigation, without offset or reduction in costs.

It was an abuse of the District Court's discretion to set Designated Counsel's fees by employing a combination of the Lodestar method with a graduated percentage of recovery method.   There is no legal precedent or logic to use such a formula to calculate a fee ward in cases such as this and to do so is an arbitrary abuse of the District Court's discretion.

The Recommendation also erroneously reasoned that the amount of the fee award represents an enhancement equal to 1.25 of the lodestar base calculated by the Magistrate Judge.   In fact, after deducting the offsets for their own clients' charges

and the short fall in the award for the out-of-pocket cost of the fee litigation, the award actually represents a reduction equal to a .848 percent of the Magistrate's lodestar base.   This mistake has the effect of actually further reducing Designated Counsel's actual compensation by some thirty-nine percent (39%)[10] from the already inexplicably low $1,581,061.56 to the unconscionable low amount of $974,298.82.

This error is also a clear abuse of the District Court's discretion to set a reasonable fee in this case, and was based on flawed methodology which this Court should vacate and correct <u>sua</u> <u>sponte</u>.   This Court should immediately order that the total amount of the award be increased to at least the equivalent of this Circuit's 3.1 lodestar multiplier for complex cases such as this, without any offset or charges for the fees earned by Designated Counsel in their own cases and increased by the amount of the Appellants' actual costs of the fee litigation.

As the U.S. Supreme Court has ruled, to permit meaningful appellate review of a fee appeal, the district court must provide a "clear explanation for its reasons for the fee award" <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 103 S.Ct. at 1941 (supra).   The reasons given by the District Court here are based on erroneous reasoning, a serious misunderstanding of the facts, and are contrary to settled law.   If the reason for the low award of fees is to account for the fact that Designated Counsel had clients of

---

[10]  $974,298.82÷$1,581,061.56 = .616

their own, that reason is arbitrary and contrary to existing law.  If the reason is because Maritime Counsel's task became significantly easier after the City employees' guilty pleas were entered, that reason reflects a serious misunderstanding of the facts and is arbitrary.  If the reason is because the Magistrate Judge was concerned that Designated Counsel would be unjustly enriched by a greater fee award, that reason also reflects a serious misunderstanding of the facts.  Under the current formula, the parties who are unjustly enriched by the fee award, those who will receive the "golden harvest of fees" to which the Magistrate Judge referred (A 928), are the private attorneys, those whose burden was only to prove the victims damages for injury and loss of life, while they are paid some 31.9% of the individual recoveries.

The facts of this case and the applicable law speak for themselves.  There can be no possible justification for not setting Appellants' fees at least at the median lodestar multiplier used in this Circuit for complex, mass-tort litigation, without offset for Appellants own clients, nor reduction for Appellants' out-of-pocket expenses from the fee litigation.  The award below should be vacated and reset in accordance with the formulae set forth above.  Private counsel fees should be charged an amount equal to five percent (5%) of each victim's recovery in order to fund this award.

36

Finally, the Cochran cross-appeal argues an issue which was not preserved below: the issue of the causal connection between Designated Counsel's work and the benefit conferred on Cochran's clients. That issue should therefore not be considered by this court. The Cochran cross-appeal also points to no error, mistake in law, or abuse of discretion in the District Court's findings that no waiver of a claim for fees occurred, there was no estoppel to be imposed on Designated Counsel and no basis to find that the request for fees by Designated Counsel was untimely. As a result, The Cochran Firm cross-appeal should be denied in its entirety.

Dated:     New York, New York
           January 2, 2013

GODOSKY & GENTILE, P.C.
Attorneys for Appellants

BY: _____
      ANTHONY GENTILE
61 Broadway - Suite 2010
New York, New York 10006
Phone: (212) 742-9700

Of Counsel:
James E. Ryan, Esq.
John J. Hession, Esq.
Dougherty, Ryan, Giuffra,
Zambito & Hession
250 Park Avenue - Seventh Floor
New York, New York 10177
(212) 889-2300

# APPENDIX A

## <u>REDUCTION IN FEE AWARD</u>

**IF TOTAL COMPENSATION IS**     **$1,581,061.56**

| | | |
|---|---|---|
| Less BBM & DRGZ&H Offsets | < | <u>$473,640.42</u> > |
| | | $1,107,421.21 |
| Less Fee Counsel Reduction | < | $133,122.43 > |
| Actual Fee Award | | $974,298.78 |
| Lodestar Base | | $1,148,547.50 |
| Lodestar Multiplier | | 0.848 |
| Percent Reduction | | 61.6% |

---

**IF ACTUAL COMPENSATION IS**     **$1,437,328.69**

| | | |
|---|---|---|
| Less BBM & DRGZ&H Offsets | < | <u>$473,640.42</u> > |
| | | $963,688.27 |
| Less Fee Counsel Reduction | < | $133,122.43 > |
| Actual Fee Award | | $830,565.84 |
| Lodestar Base | | $1,148,547.50 |
| Lodestar Multiplier | | 0.723 |
| Percent Reduction | | 57.7% |

## <u>CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)</u>

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,373 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).


2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14 point font.


               GODOSKY & GENTILE, P.C.
               Attorneys for Appellants

          BY:  _____
                 ANTHONY GENTILE
                 61 Broadway - Suite 2010
                 New York, New York 10006
                 Phone: (212) 742-9700